IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DAVID WILSON (ADC#138042)                                                 PLAINTIFF

v.                                Civil No. 6:13-cv-06036

DON NELSON, CORIZON LLC,
JAMES PRATT, JOHN HAROLD
AND JIM McLEAN                                                DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, David Wilson, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections Ouachita River Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Summary Judgment Motion from the ADC Defendants (Don Nelson, John Harold, and Jim McLean) and a Summary Judgment Motion from the Medical Defendants (Corizon LLC and James Pratt.) ECF. Nos. 61, 68. Plaintiff responded. ECF Nos. 74, 79, 90. Defendants replied. ECF No. 77, 82, 91, 92. After careful consideration, the undersigned makes the following Report and Recommendation.

**I.     BACKGROUND**

During the time at issue here Plaintiff was incarcerated in the Arkansas Department of Corrections Diagnostic Unit in Pine Bluff ("Diagnostic Unit") and the Ouachita River Unit in Malvern, Arkansas ("ORU"). Plaintiff filed his Complaint in the Eastern District of Arkansas on

March 29, 2013. ECF. No. 2. His Complaint was transferred to this District on April 15, 2013 after the ADC was dismissed as a Defendant. ECF. No. 3.

In his Complaint, Plaintiff named Don Nelson (ADC Head of Construction), Corizon, James Pratt (Corizon employee), John Harold (ADC Construction Supervisor), and Jim McLean (ADC Construction Supervisor). ECF No. 1. On October 29, 2013, the Court ordered service on the Medical Defendants in care of the law firm Humphries and Lewis, and the ADC Defendants in care of the Arkansas Board of Correction. ECF No. 9. Humphries and Lewis accepted service on behalf of Corizon, Inc. but declined to accept service for James Pratt, as he had been terminated from Corizon on August 22, 2013. ECF No. 11. Subsequently, the Court ordered James Pratt to be served at the address provided by Humphries and Lewis. ECF No. 24. Humphries, Odum, and Eubanks[1] subsequently filed a Notice of Appearance on behalf of both Corizon and James Pratt. ECF No. 22, 38.

In his Complaint, Plaintiff alleges his Eighth Amendment right to be free from cruel and unusual punishment were violated in relation to back, arm, hip, and knee injuries he suffered when he fell through a prison barracks ceiling while doing electrical work on his ADC job assignment.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a

---

[1]It appears that this is the same law firm, as the address of PO Box 20670, White Hall, AR is used consistently despite the changes in named partners.

reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    DISCUSSION**

Plaintiff argues the ADC Defendants failed to properly train and supervise him, resulting in his fall and injuries. He argues the Medical Defendants repeatedly delayed or denied medical care after he was injured.

The ADC Defendants argue Summary Judgment should be granted as to Plaintiff's claims against them because he failed to file a grievance against them, his claim is based on the theory of respondeat superior, and his claims are barred by both qualified and sovereign immunity. ECF No. 61. The Medical Defendants argue Summary Judgment should be granted as to Plaintiff's claims against them because Plaintiff did not exhaust his claims against Corizon, James Pratt had no direct involvement or authority in the medical consultation process, and his claim fails as a matter of law because he was treated for those conditions deemed medically necessary. ECF Nos. 91, 92.

### A. Plaintiff Failed to Exhaust His Administrative Remedies Against The ADC Defendants

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

In this case, Plaintiff admits that he never filed a grievance against the ADC Defendants. He argues that he did not do so because the Administrative Directive 09-01, section III G, 4 states that job assignments are non-grievable. ECF No. 90-10.

This section does state that a number of matters are not grievable:

1. Parole;
2. Release;
3. Transfer;
4. Job assignments unless in conflict with medical restrictions;
5. Disiplinaries;
6. Anticipated Events (i.e. events or activities which may or may not occur in the future);

4

    7. Matters beyond the control of the Department of Correction, including issues controlled by State or Federal law or regulation.

AD 12-16.III.G. Items that are grievable include:

    1. A policy applicable within his or her unit/center of assignment that personally affects the inmate;
    2. A condition in the facility that personally affects the inmate;
    3. An action involving an inmate(s) of his or her facility that personally affects the inmate;
    4. An action of an employee(s), contractor(s), or volunteer(s) at his or her facility that personally affects the inmate;
    5. An incident occurring within his her facility that personally affects the inmate.

AD 12-16.III.B. Reading these two provisions together, it is clear from the plain language of this policy that an inmate is prevented from grieving exactly what work assignment he or she may receive, unless the assignment conflicts with medical restrictions. It does not prevent an inmate from grieving an injury that he or she believes was the result of a faulty policy, action, condition, or incident simply because it occurred during a work assignment.

    Nor does Plaintiff's subjective belief that he could not grieve the incident excuse his failure to exhaust his Administrative remedies against these Defendants. The Eighth Circuit has repeatedly held that a court is not permitted "to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon. v. Vande Krole*, 305 F.3d 806, 809 (8th Cir. 2002)(citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir.2000), *cert. denied*, 531 U.S. 1156 (2001)).

    Because Plaintiff did not exhaust his Administrative remedies against the ADC Defendants his claim against them is barred by Section 1997e(a) of the PLRA.

    **B.**    **Plaintiff Failed to Exhaust His Administrative Remedies Against Corizon**

Corizon argues Plaintiff failed to exhaust his administrative remedies against them because he did not explicitly name the company in his grievances and that, despite delays, Plaintiff ultimately received all medically necessary treatment. Because Plaintiff failed to name Corizon in the grievances exhausted before he filed his complaint, he failed to exhaust his Administrative remedies against the company.

The Eighth Circuit has held "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). In *Hammett*, Plaintiff's grievance appeals were untimely, but otherwise complete. Therefore, the Court reasoned that the policies underlying the exhaustion requirement were met when the institution waived the procedural timing requirements and instead decided the claims on the merits. *Id.* Specifically, the Court noted that the benefits of exhaustion:

> are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies. A complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective. This rule also takes into account the likelihood that prison officials will benefit if given discretion to decide, for reasons such as fairness or inmate morale or the need to resolve a recurring issue, that ruling on the merits is better for the institution and an inmate who has attempted to exhaust available prison remedies.

*Id.* at 947-48.

Failure to name a party is more than a "mere procedural flaw" when it prevents the agency from fully addressing the merits of the grievance and thereby defeats the purpose of the exhaustion requirement. *Burns v. Eaton*, 752 F. 3d 1136, 1141 (8th Cir.2014). In *Burns*, the Plaintiff failed to name an officer in a grievance about an incident, and his amended complaint about that incident later

6

added facts not in the original incident grievance against that second officer. *Id.* Although the prison had decided the greivance on the merits, the Court of Appeals held that the failure to name the second officer rendered it "completely unexhausted" against that second officer because although the officers were both involved in the incident, "they had different responsibilities and took different actions." *Id.* "Thus, this was not a case where prison officials declined to enforce their own procedural requirements and opted to consider otherwise-defaulted claims on the merits. *Id.* (internal quotations omitted)(quoting *Reed–Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir.2010)). "Rather, the amended complaint against [the second officer] asserted a new greivance . . . completely unexhausted." *Id.* at 1141-42. (internal quotations omitted.). Therefore, the policy concerns underlying the exhaustion requirement were not met.

Several later unpublished Eighth Circuit cases by different panels, while not binding on this Court, appear at first glance to be split over whether failure to name is always more than a "mere procedural flaw." *See Morrow v. Kelley,* 2013 WL 6500616 (E.D. Ark Dec. 11, 2013) for discussion of these cases. However:

> overwhelming recent precedent has harmonized these Eighth Circuit opinions by focusing on whether - despite the procedural flaw- prison officials reached and decided the merits of the specific claims asserted against each defendant. To make that determination, the Court must look beyond the prisoner's grievances and examine the issues that the prison officials reviewed and decided during the administrative appeal process. This approach is consistent with the *Hammett* opinion and the purposes of the PLRA's exhaustion requirement.

*Colten v. Hobbs*, 2014 WL 1309069 (E.D. Ark. Mar. 28, 2014)(internal quotations omitted)(quoting *Morrow*, 2013 WL 6500616 (E.D.Ark. Dec. 11, 2013) and citing *Jones v. Bond*, 2013 WL 6332681 (E.D.Ark. Dec. 5, 2013); *Hooper v. Kelley*, 2013 WL 5881613 (E.D.Ark. Oct. 30, 2013); *Scott v. Burl*, 2013 WL 5522404 (E.D.Ark. Oct. 1, 2013); *Wallace v. Warner,* 2013 WL 5531280 (E.D.Ark.

Sept. 30, 2013)). Using this approach, "the Courts have consistently dismissed named defendants who were not otherwise identified in exhausted grievances, either by their names, descriptions of their positions, or the conduct which led to the complaint at issues. *Leggett v. Corizon, Inc.*, 2104 WL 5325170 (E.D. Ark. Oct. 17, 2014.)

In this case, the record shows Plaintiff completed the grievance process for three grievances prior to filing his complaint. ECF. Nos. 69-1, 70-1-56.)These are OR-12-1350. OR-12-1408, and OR-12-1580. ECF Nos. 69-7, ECF 70-1-56.

OR-12-1350 was filed on October 10, 2012. ECF No. 70-57. It concerned the delay in getting a post-MRI followup on his hip, and named Mr. Pratt. It did not name Corizon. Therefore it will be discussed below in the section for Mr. Pratt.

OR-12-1408 was filed on October 25, 2102. ECF No. 70-60. It concerned the fact that another inmate's medical information was in his medical jacket. He wanted to be able to review his own medical information and was concerned about other inmates seeing his information. It did not name Corizon or any specific personnel. The response on October 19, 2012 apologized for the misfiling, and instructed Plaintiff to file a new request to review his records.

OR-12-1580 was filed on December 18, 2012. ECF 70-1-61. This grievance stated "I have repeatedly not been seen and/or received the needed medical treatment in a timely manner since I fell on Construction and broke my right hip, hurt my right knee, and fractured my right elbow on 4-7-10." *Id.* The first response to this greivance was dated January 15, 2013, the day before he saw orthopedic surgeon Dr. Crowell on January 16 for his MRI followup and was informed that he needed a hip replacement. This grievance was found to be without merit. Specifically, it stated that "you have been seen for this issue in sick call and by a provider. You currently are scheduled to see

8

an orthopedic provider on 1/16/2013. Your grievance is without merit." *Id.* Plaintiff appealed on January 17, 2013. He repeats that he has not been seen and/or received treatment in a timely manner for his injuries, provided several time delay examples, and that Dr. Crowell told him that his hip now needs to be replaced - "hopefully in a timely manner." It did not name Corizon or any specific personnel. On March 11, 2013, his appeal was found to be without merit, noting that he had received a hip replacement on February 22, 2013. The appeal notice also states "you must be specific as to the substance of the issue, including the date, the staff involved, place, and witnesses. . . .You did not grieve a specific incident or provide dates within the time frame allowed by policy." *Id.* at 63.

Because Plaintiff did not name Corizon in these grievances, and further did not provide sufficient detail as required by policy, he failed to exhaust his Administrative remedies as to Corizon. Although the grievances did proceed through the greivance appeals process, the failure to name and to provide sufficient detail on the grievances prevented the agency from fully addressing the merits of the grievance, thereby defeating the purpose of the exhaustion requirement.

### C. Plaintiff Fully Exhausted His Claim Against James Pratt

Plaintiff did name James Pratt in OR--12-1350, filed on October 12, 2012. In this greivance he stated that:

> I received an MRI of my right hip on 7-25-12 and I was told that I should be seen within two weeks . On 8-7-12 I was seen at sick call and was told that they would check on this matter. On 8-20-2012 I sent Mr. Pratt a request to check on this matter. On 9-4-12 I sent Mr. Pratt another request on this matter. I was seen at sick call on 9-18-12 and was told that they would check on this matter. I would like to know when I will be seen by Dr. Crowell to discuss the results of the MRI that was taken of my right hip.

ECF No. 70-57.

9

On November 2, 2012, Mr. Pratt signed a health services response which stated:

Ms. McGrath did review your MRI results and has submitted a consult to Dr. Crowell. There was not enough information present to approve the consult. The request was returned to Ms. McGrath. Ms. McGrath met with you on 10/25/12 and prescribed medications to address any problems your knee may be causing you. Your greivance is with merit but resolved. If you have any other problems with your knee drop a sick call request so the nurses can get you back to see Ms. McGrath.

ECF No. 70-58.

On November 6, 2012 Plaintiff appealed the response stating:

I disagree with this decision because I have not been seen by Dr. Crowell for a consult to discuss the results of the MRI that was taken on 7-27-12 on my right hip as the greivance states. I do not understand why being seen by Ms. Graft [sic] and being prescribed medications to address my pain I have with my knee stops me from being seen by Dr. Crowell to discuss the results of the MRI on my right Hip that Dr. Crowell ordered and I received on 7-27-12.

ECF No. 70-58.

On December 28, 2012 this appeal was found to be "with merit" "due to the delays." ECF No. 70-59.

Thus, it is clear that Plaintiff fully exhausted his Administrative remedies against Mr. Pratt for this grievance.

### C.     Plaintiff Did Not Place Verifying Medical Evidence in The Record To Show That The Delay In Treatment Caused The Need For His Hip Replacement

Plaintiff has not placed sufficient verifying medical evidence in the record to show the six-month delay between when he had his MRI and when he was permitted to see Dr. Crowell was the reason he lost his hip. Given the diagnosis of avascular necrosis[2] of the right hip on the July MRI

---

[2]Necrosis is defined as "death of living tissue." http://www.merriam-webster.com/medlineplus/necrosis. An infarct is defined as "an area of

results, I agree this delay was quite troubling. Inherent in this diagnosis was a time-urgency that should have been understood by any of the medical personnel who reviewed his record. To date, no explanation has been proffered for the six-month delay by the Medical Defendants. However, the lack of verifying evidence as to the detrimental effect of the delay prevents it from rising to the level of an Eighth Amendment violation.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to

---

necrosis in a tissue or organ resulting from obstruction of the local circulation by a thrombus or embolus." http://www.merriam-webster.com/medlineplus/infarct.   "Osteonecrosis (ON) is a focal infarct of bone that may be caused by specific etiologic factors or may be idiopathic. It can cause pain, limitation of motion, joint collapse, and osteoarthritis. Diagnosis is by x-rays and MRI. In early stages, surgical procedures may slow or prevent progression. In later stages, joint replacement may be required for relief of pain and maintenance of function." http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/osteonecrosis/osteonecrosis.html?qt=osteonecrosis&alt=sh. "

show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). In evaluating a treatment delay for summary judgment purposes, the court "must accept facts as recited in prisoner affidavits as true..." *Wise v. Lappin*, 674 F.3d 939, 941 (8th Cir. 2012) (citing *Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001.)(taking Plaintiff's statements as true, the record revealed trialworthy issues as to a treatment delay of two months for a broken jaw when prison medical providers had a diagnosis and recommendation for a specialist referral, Plaintiff repeatedly complained of pain and difficulty due to his injury, and the jaw deformity was physically obvious.)

In this case, Plaintiff submitted his July MRI and January x-ray results, as well as Dr. Crowell's examination notes from June 2012 and January 2013. ECF No. 90-92, 96, 104-06. He also submitted portions of medical websites discussing avascular necrosis. ECF No. 90-97. Dr. Crowell's notes on June 6, 2012 noted hip pain and ordered an MRI of the right hip. The July 27, 2012 MRI results stated a diagnosis of osteonecrosis/avascular necrosis of the right femoral head. ECF No. 90-96. Dr. Crowell's notes on January 16, 2013 noted the osteonecrosis and ordered a hip replacement. There is no indication in the records the hip replacement was necessitated by the six month delay. Nor is there any notation to that effect in February 2013 when Plaintiff had his surgery.

At the January 16, 2013 examination, Plaintiff stated that Dr. Crowell first discussed the possibility of either surgical intervention to try to save the hip, or a hip replacement. Afer finding it had been six months since the MRI, he ordered an x-ray, and then told Plaintiff he needed a hip

replacement. ECF No. 2-56. However, when asked if Dr. Crowell made a note in his folder stating that his hip condition had worsened as a result of not being seen as directed after the July 2012 MRI, Plaintiff checked "No." He wrote in "[a]ll Dr. Crowell noted was that I needed a hip replacement after he reviewed the x-ray film taken on January 16, 2013 when he realized it had been six months since the MRI was taken. ECF No. 90-27. Further, the website materials submitted by Plaintiff state, for patients with avascular necrosis, "[f]emoral head collapse usually occurs within 2 years after development of hip pain." ECF No. 90-97. My review of the medical literature indicates that early surgical intervention "*may* slow or prevent progression." MERCK MANUAL, http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/osteonecrosis/osteonecrosis.html?qt=osteonecrosis&alt=sh." (last visited Feb. 2, 2015) (emphasis added).

Therefore, taking Plaintiff's facts recited in his affidavits as true, he has not provided sufficient verifiable medical evidence to show the six-month delay between his MRI and his consultation with Dr. Crowell rose to the level of an Eighth Amendment violation. *See Dulany v. Carnahan*, 132 F.3d 1234, 1241 (8th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825,844 (1994)("The existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm.) Finally, when asked if he had ever been denied pain medication, Plaintiff stated that "I received all pain medication in a timely manner." ECF 90-26.

Therefore, there are no genuine issues of material fact regarding Plaintiff's delay of medical care claim, and this claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motions for Summary Judgment (ECF.Nos. 61, 68.) be **GRANTED** and that all Defendants be dismissed from this action without prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED this 12th day of February 2015.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE